May it please the Court, my name is Nicholas Brown. My co-counsel is James Angel. We represent Branch Banking & Trust Company, who is the appellant in this case. And this morning we're asking the Court to reverse the District Court's decision because North Carolina subcontractors do not have an interest in property prior to serving notice of claim of lien on balance. Therefore, the exception to the automatic stay does not apply for them. Does this case rise and fall on whether or not there is such an interest? Yes, and I think both parties agree that that is the key issue here, whether there is an interest in property as of the petition date in the hands of the subcontractors. Now this case started with a bankruptcy filing by a general contractor. As the Court is aware, at the time of the bankruptcy petition, Branch Banking & Trust Company had a properly perfected lien on receivables, among other things. And at the time of the petition, the subcontractors had performed work for the benefit of the general contractor. If the Court had removed the automatic stay, if they'd moved the Court and the Court had done so, could they have perfected their interest? The Court has the authority to remove the automatic stay? I said if the Court had removed it, could they then have perfected their interest? They could have if the Court had lifted the stay specifically to allow the subcontractors to perfect an interest in property. So the answer is if the Court had lifted the stay, they'd gone to the Court and said what they wanted to do and the Court had lifted the stay, then your answer is they then could have perfected. Yes, but I believe the Court would have needed to decide that the exception to stay did not apply in order for that to happen. When the petition was filed, obviously the automatic stay was triggered, and it's important to realize the purpose of the automatic stay. That is to prevent a dismemberment of the bankruptcy estate by creditors and to allow the debtor a breathing spell. When you just said the Court would have to determine that the estate did not apply, you mean then the first part of what Judge Shedd asked wouldn't happen? In other words, he wouldn't lift the stay? Well, that's exactly right. The exception to stay would have to not apply. But if it lifted the stay, then you could then perfect. But I think the Court would have to decide that the exception did not apply first, then the Court could lift the stay and allow the subcontractors to perfect their interest. Sorry if I wasn't clear about that. Now, notably, the Bankruptcy Court in this district… What is it in the word interest that under the right circumstances could be perfected? Doesn't there have to be an interest that's preceded to perfecting that interest? That's what this case boils down to. That's a great question, Your Honor. What is the interest in property? I didn't say all that. I said, doesn't there have to be an interest before any such interest can be perfected? Well, it doesn't follow that. That's correct. There must be an interest in property to perfect. Right. You can't perfect something if there's no interest. So we have to identify what is the interest in property, if any. And the answer is… And when you answered my question about could be perfected, you suggest that that interest issue has to be defined before you get to perfecting. That's right. The interest must be in place at the time of petition. So tell me about the type of interest or lien that's here. It's not your garden variety lien, is it? I mean, isn't it one that's created by statute? It certainly is, Your Honor, and it's not your garden variety interest in a lot of ways. It's helpful to refer to other cases that have dealt with this issue. For example, Maryland Glass, which was determined by this court, where we had an interest in property held by the county for property taxes. And in that case, the court determined that the county's interest in real property was ever-present, longstanding, and without question because it is certain that the county will have an ability to charge taxes against real property every year. It happens every year at the same time. You can't avoid it. And that sounds like a good analogy, but I'm trying to at least understand the type of lien here. This is a supplier's type lien. Material man's lien is what it's called. It's a materials man lien or a mechanic lien. And under the North Carolina version of this, essentially someone who supplies materials to a construction site has a lien, so to speak, that can be later perfected. And what the statute provides is a remedy to subcontractors who have furnished labor materials. They have a right to obtain a lien. But there's a difference between the mere right to obtain a lien and actually having the lien. And it's based on the specific provision of these supplies. I mean, there's a reason for it. You know, who would give a contractor a set of bricks to put on a house if you didn't have some assurance that you were going to get your money other than I'm going to get some money in the future and give it to you? I mean, it's not just bankruptcy. It also is the fact that a lot of times you just don't know what goes on on construction sites. So there's this provision. Well, let me ask you, because I think I see something that I think is interesting, at least I want to know, because you're representing B&T, which I take it is a secured creditor. That's correct, Your Honor. And so if it goes in the direction you're asking and then these creditors, so to speak, put in an automatic stay situation, and if ultimately they were not able to recover, then I take it B&T could then also seek recovery from the secured property. And that is an important distinction here. Which would include those bricks I just talked about. The bank does not have a lien on the property here. The bank has a lien on property that the debtor has an office on, but this is not the property being approved. There is no lien on the owner's property. The only lien of the bank that comes into play here is the lien on receivables, and that is the issue here. Construction loan. Well, there's a construction loan where the bank financed construction for the debtor, and in this way the bank actually provided credit to the debtor just like the subs are doing. You asked about, you know, don't subs provide credit to the debtor? So did the bank in the form of construction financing. If there had been no bankruptcy, who would take first between these people who perfected and B&T? At the time of the petition. I didn't say anything about petition. I said if there had not been bankruptcy. Okay. You painted a picture, which I thought was the case, that really both people may have a claim at certain points on those funds. Because I take it this is something being built on property owned by another. That's right. Is that right? There's a third party here. That would be another, wouldn't it? I'm sorry? That would be another, right? I'm talking about being stunned by that. I said the property is owned by another. A third party. That's correct. A project owner who's not a party to this appeal. That's why I said another. Right. Okay. It's owned by another. And so the bill is, at least in this case, it's not a typical material or workman's lien on a house that you build on somebody's property. They own the property and the house. This is what you do with the building that's being placed on there and the funds coming in and going out of the contractor's operation to construct that building. That's correct. But if there had been no bankruptcy, what would happen under North Carolina law as between the subcontractors and B&T on those funds? Sure. The bank's lien on receivables is properly perfected. But if this had been perfected, then what would happen? Okay. If it had been perfected, subcontractors have a priming statute under the statute that would allow them to take over B&T's interest. So you think bankruptcy changes North Carolina law? I don't think that it changes North Carolina law. I think that it freezes the rights of creditors. Let me stop for a second. Can they perfect now? Can they perfect now, the subcontractors? They have because they have an order in the bankruptcy. No, no, no, no. I'm not talking about that. That's what you're talking about. That's what you're picking. But under bankruptcy law, do you think we went back to one of the first set of questions. You know they couldn't perfect it unless the court decided that they had an interest in property. If the court had allowed them to perfect, that's the only way that they would be in the same status outside of bankruptcy and in bankruptcy, isn't it? Because you just said, I don't want to be too confusing, but you said no bankruptcy, they would be allowed to perfect, and then the subcontractors would really take first over the bank. That's correct. But bankruptcy changes that in your opinion. It does, Your Honor. And it changes it for what reason? Some statutory word? That's the issue we have to deal with here, whether bankruptcy changes it. Well, whether it stops the subcontractors from taking steps to obtain a lien. What word, what word, what word, what word or words in the statute or some statute would say you're right and bankruptcy stops it? I want to focus on those words. Okay. It's the automatic stay. No, no, no. What words? The act to create, perfect, or enforce a lien on property of the estate is prohibited by the automatic stay. That's 362A4. And the stay is broad and encompassing. So wait a second. All liens are prohibited, all liens? If you don't have a lien at the time of the bankruptcy case, you cannot take steps to obtain a lien subsequent to bankruptcy. Well, but I'm looking at North Carolina law, and I could have the wrong version of the statute, but it's 44A-18A. It says the first-tier subcontractor who furnished labor materials or rental equipment at the site of the improvement shall have a lien upon funds. Okay. Your Honor, we may have a problem here because you may have an updated version of the statute. Oh, I got you. And this is important to see. The law was changed after this. After this? Under the new law. Under the new law, it's a completely different analysis. Under the new law, you lose. And I haven't analyzed the new law, Your Honor. Can you just answer me yes or no? Well, it's going to be a harder case for the bank, for sure. So you don't want to admit that you lose? Well, I just haven't analyzed the new law. The new law. Well, you're the expert on it. I'm certainly not an expert on it. I'd like to think I'm more of an expert on it. Absent the bankruptcy, you lose. Under the new law, you lose. But with the bankruptcy, you say you win. That the bankruptcy changes at all so long as it's under the old law. Right? Is that your position? Now what do we boil us down to here? Under the old law. That's where we are here. That's correct. Under the old law, absent the bankruptcy, you lose. Under the new law, even with the bankruptcy, you lose. Under the old law, with the bankruptcy, you win. You win. That's your position. Except that. You were assuming that under. The bankruptcy turns it all upside down as long as you got the old law. Well, you were assuming, Your Honor, that if there was no bankruptcy, the subcontractors would have filed liens by serving notice of claiming lien on funds. That didn't happen. The bankruptcy served as an invitation to all subcontractors who were dealing with the general, hey, file your liens. That's a pretty fair presumption, and even under the law as you understand it, that if they didn't perfect, they would lose their interest. So we presume they acted not of their self-interest? Under what scenario would they not perfect their interest to get priority outside of bankruptcy? And we don't know. Well, we do know that they didn't take the steps necessary to do that. Let me ask you this. Would you advise any clients you had under those scenarios not to file, to perfect? Your Honor, I would have, after Harrelson Utilities, which was the former bank. Would you have done that to say don't worry? Of course not. I wouldn't. I didn't think you would. But, Your Honor, after Harrelson Utilities, these subs had noticed that that was the law in the eastern district of North Carolina, but these very subcontractors did not take steps to obtain a lien on funds. They knew about the law. Tell me why under the prior law you win. Why is that so? The Harrelson Utilities case was on all fours with this case, except that Judge Small determined. I didn't ask you to describe. Does that case control us? It's not controlling us. So that's not why you win. No, but I do urge the court to look at Judge Small. I didn't ask you that, though. I said tell me why you win. That may be a fine decision, but it doesn't control us, does it? Okay, you have to convince us. And the reason that the bank wins here, Your Honor, is because the plain language of North Carolina lien law does not provide for an interest in property. And you were asking about. It provides for what? What does it provide for? And you were asking about what it reads. The old law starts with, in 44A.18, upon compliance with this article, first-tier subcontractor who furnishes labor and materials shall be entitled to a lien on funds. Later on in 44A.18, it says lien upon funds granted under this section is perfected upon the giving of notice of claim of lien on funds and shall be effective upon the obligor's receipt of novice. Let's look at that. That lien upon funds, what does that operate over? Does the interest that creates the lien upon funds, the underlying factual basis, is that made up? What does that operate on? Under general law, you get a lien when you have an interest and you try to protect that interest. And you serve the notice. No, no, no, no, no, no. I'm not talking about perfecting it. I'm just asking. Any way that you read that, I'm just asking this question. You think that there's nothing at all that exists in any fashion vis-à-vis or between the subcontractor and the contractor. There's nothing that exists except and until the notice is filed and the lien is created. That lien is the interest itself? Or does that lien represent something that is due? Yeah. What the subcontractor has with the general is a mere contractual right to payment, a claim or a debt, and that is not an interest in property. The property that we're talking about today is in the hands of that another party, the third party. It's funds in the hands of the obligor. And until a lien is obtained, there is no ability of the subcontractor to attach any interest to those funds. And, Your Honors, I see that I'm out of time. Thank you. You've saved a few minutes. You've saved a few minutes for rebuttal. I have saved five minutes. Thank you. Mr. Wolfe? You don't agree with all that, do you? Except for the part about the bank losing. William J. Wolfe here on behalf of the creditor appellees. And it is certainly the creditor appellee's position that the bank would lose under the new law as enacted. I believe, Your Honor, was reading from the law existing at the time of this, of the liens at issue. In this case, I don't think you have the new statute because under the old law, the bank loses as well for the reasons very clearly analyzed and decided by both the bankruptcy court and the district court in the case at Barr. So you know Judge Small. I do. He's been around a while, and he wrote this very long opinion in Harrison that's against you. Tell me, why is he wrong in that opinion? Because he looked at when the lien became effective, when it became effective as opposed to whom it became effective against. And that was the thing that threw me for a long time because he's an extremely knowledgeable bankruptcy judge. As is Judge Leonard. As is Judge Leonard, absolutely. And in reading it, I kept thinking, you know, certainly they've made a mistake in Carolina lien law here because our lien law is hopelessly confusing. And that must be the origin of the error. And in fact, it isn't. It was actually under the bankruptcy code in analyzing the exception to the stay. And it's a simple black and white test. You don't look at the issue of can you do it or can't you do it initially. You analyze it by saying, all right, if you perfect, as all of the appellee creditors have in the case at Barr, that we have now perfected. Really, we could have perfected before the bankruptcy court said that we didn't have to ask for bankruptcy court permission. Legally, we could have perfected. And then you look at that point in time who the lien is effective against. That's under the exception to the stay. If it's effective against a prior perfected security interest, then it is within the exception. And BB&T is a perfect example. There's no question that they had their UCC-1 filed way before the appellee creditors perfected their lien on the funds. But there's also no dispute that upon that perfection, we primed BB&T and we were in front of BB&T. So we meet the express statutory provisions. Is that the issue, or is it the question of the automatic stay? No, there's no question that you – In terms of whether they go before BB&T or not, I thought we were dealing with the automatic stay provision because the perfection hadn't been put in place before the bankruptcy was filed. No, I mean the whole case turns on whether we were entitled to perfect post-petition. The whole question turns on whether or not – that's why I asked the other side. I think you both agree the question really turns on whether or not the subcontractors had an interest in property or had an interest before the bankruptcy filing. That's exactly right. And then if you did – now the other side said, well, the court would have to determine that. But if you did, then the court has determined that you do. And perfection would follow as a matter of course. Exactly. The allowance to perfection. So you agree the whole matter turns on whether or not your clients had an interest before the petition was filed. Exactly. And when Mr. Brown was just up here, he said a mere right to payment is not property. Well, that's all the bank had too. I mean that's all – you look at the bankruptcy petition. This debtor had something like $7 million worth of assets. $5.5 million worth of them are the receivables on their jobs. That's the ultimate 90% or 85% of the debtor's assets. Phil, there's a dispute in this case. When you normally look at a bankruptcy case, the question sort of comes who's secured, who's not secured. And it's sort of – it's a battle between secured and non-secured. In this case – or unsecured. In this case, is this just a battle between secured if you get your – if you win? And it's not much of a battle because we clearly win. That's what I'm saying. But it's just two secured creditors fighting. I'm just asking this question. Maybe you don't know. Would the determination of that affect unsecured in any way in this case? Yes, because if we're included in secured rather than unsecured, we're going to get paid on the job. No, but I'm talking about if you're entitled to that. If you're not entitled to that, that pool of money, is the bank going to get it? Is there excess money? The bank would get it. You understand my question then? It's not a question. We'll get back to your argument. This is not a question of how much money the pool of unsecured creditors will get. It's a question of who will be in that pool. Exactly. It's whether my clients are unsecured or secured. And we can tell. And why is it that you are secured? Why is it that you have an interest? I'm looking at North Carolina law to decide whether or not you have an interest. And you say it is because you do have a lien, but that lien you say is based on something, which is the right to payment. But you say that's the same theory that the other secured creditor you want to be battling, although you know you'll win that battle. That's the basis for their claim too, a contractual right to payment. But ours is more than just a contractual right to payment, because we have a statutory right to payment for the materials that we put on these projects that originates in the North Carolina Constitution. What materials did you all put out there? What did you do? Did you put bricks? Is that what you judged when? The Hansen aggregates supplied stone and concrete. RW Moore. These are my three clients. There's other appellees that I don't directly represent. RW Moore supplied equipment, and Couch Oil supplied the fuel to run the equipment. Equipment to do what? To build the projects. These are what, single-family homes? No. Typically this was more like developing a subdivision for a developer is usually the scenario. There were different scenarios. But typically the debtor was in the business of developing land, putting the utilities underground. The streets and utilities, yeah. Exactly. Before they built the home. Right. And then the developer would pay. And, again, I think that's important. The question came up, did BB&T provide the financing? And I think it was misstated that they did. BB&T did not provide construction financing for any of the projects that the creditor appellees placed their notices of liens on. They just provided general credit to the debtor, mostly secured. Secured by its office building and secured by its equipment and secured by its vehicles. So BB&T was not providing the construction financing. Really, the interim construction financing was effectively provided by the creditor appellees because they knew under North Carolina law that they had a super lien priority and that they would ultimately get paid if they acted in a timely manner. And there's much to do about the fact that they didn't file their liens or perfect their liens before the bankruptcy petition. But in this court, and it's been conceded in oral argument just a few minutes ago, all of the creditor appellees were timely in the assertion of their perfection. Even though it was post-petition, that was timely, and it would immediately attach to whatever money was due at that time and would become due in the future. Well, I can understand the policy argument, which I don't think is the first level we look at. But the policy argument is if you're not careful, everybody who ever delivers anything to any site is going to immediately run and perfect their interest, their lien in that property. And then you're going to have other creditors looking at that general contract and going, that guy must be on the verge because everybody's having to file against him. It's in the Triangle Business Journal every week. But let me ask you this question. I want to take you back to something you wrote in your brief. It's at page 4. I'll read it to you. Thank you. Because I don't understand this. You say if those in co-aid unperfected lien rights upon perfection would not be effective over an intervening bona fide purchaser for value, then they would fail this federally mandated test and would not be deemed an interest in property as used in 11 U.S.C. 362b3. That's not right, is it? It actually is, but I will say that that's like a double or triple negative. It shouldn't have been written that way. My question, though, is it's still an interest in property, isn't it? It's just not an interest in property that's effective under the code. Because the term in 362 just says permits an interest in property to the extent that. Well, it has to be an interest in property to bring us within the exception to the automatic stay so that we can perfect. And so if it's not. Let me ask you this much. Are there interest in property outside the bankruptcy code that may not be protected by the exception? It seems to me that sounds. Certainly. It sounds to me like I know you make the argument step one, is it an interest in property in step two, whatever that is, general applicability. And you say, well, let's look at step two first. But it seems to me step one is the right step to look at first. It doesn't have to be an interest in property first, and then you decide whether or not it's a type of interest in property that's protected under your argument. Exactly. There has to be an interest in property, and then the way you determine whether it's protected under the exception is the priority given it after perfection. By way of example. No, no, no. I don't need any example. 362 doesn't define an interest in property, does it? It just says. No, but it talks about like an interest in property, property of the estate. Does it define interest, the phrase interest in property? No, it does not. Does anything in the bankruptcy code do that? Well, it talks about property of the estate, and I think that would probably be a good place to look for property. Does it define an interest in property? No. I don't think it does. And 362 doesn't say it is an interest in property if it says a subcontractor may proceed, quote, with an act to perfect or maintain or continue the perfection of an interest in property to the extent. But that's not defining an interest in property. Doesn't that say if you have an interest in property under 362, you may do certain things with that interest in property? And when you look at 546, it doesn't say what an interest in property is. It says that the perfection of an interest in property to be effective against another entity, that tells you what type of interest in property is effective for certain priorities. But none of that defines what an interest in property is. And I'll ask you one more time, and then I'll let you go on. But it seems to me that's not correct to say that it would fail as an interest in property. It might be that it would fail protections or it would fail to have the status, but it doesn't seem to me it would say it was not an interest in property. Do you see my point? Absolutely, and I agree, Your Honor. Okay. It would not fall. It would not be an interest in property that could be perfected post-petition. It still might be. But it would still be an interest in property. It's sort of like if this debtor had another bank that it had given a security interest, a security agreement to, and that bank had not yet perfected by filing a UCC-1. My question is then, my question is, that's why I ask, is does it turn on is this an interest in property before the petition? And there's nothing in the rest of that definition as to what kind are effective and aren't effective. That's not the argument in this case, as I understand it. It's just whether or not there's an interest in property. Is there really any argument in this case if your clients have an interest in, by either side, that if your clients have an interest in property pre-petition, then they have the right to perfect it? The argument isn't you have an interest in property, but you can't perfect it. Isn't that correct? The whole case turns on whether or not you have an interest. Well, that's what I ask the other side repeatedly. That's the first step. Obviously, you have to have an interest or there's nothing to perfect. Was there any other step in this appeal? Was there any other step other than is under North Carolina law, is there an interest in property before the filing of the bankruptcy petition? It's really not in this case because the parties agreed that if it is an interest in property, that we could file because there's no disagreement that we would prevail over the bank, which is the second step of falling within the exception. The answer would be yes, wouldn't it? Exactly. The only thing is whether or not you have an interest before petition. Tell me now, just in very succinct words, and then I'll let the other judges ask their questions and stop taking all the time. Tell me as succinctly as you can why it is that you have an interest in property pre-petition. Because under 44A-18, which I think Your Honor has already read from, I may have the wrong version. The lien upon funds granted under the, and I'm reading subsection 5 of the version effective 2011, the liens upon funds granted under this section shall secure amounts earned by the lien claimant as a result of having furnished labor materials or rental equipment at the site of the improvement. The other side said the statute says that the lien upon funds is effective or something like that. That's what he said. Next. Well, just make your argument. Right. So my argument is when we deliver materials, we have an interest in that receivable that we just generated for the debtor. What does that statute, what in that statute says exactly that? That upon delivery of materials on the job site, the subcontractor has a lien upon funds. I don't think it says that, does it? Well, anybody that delivers material to the project can assert a lien on funds, so that's who they're talking about. But it says, I'm asking, you don't understand, does it say you have one or one is effective or one can be created upon perfection? I'm asking for that operative language. It says we have the right. Are you reading from the statute or are you paraphrasing to me? I'm paraphrasing. The statute says the liens upon funds in subsection five granted under this section shall secure amounts earned by the lien claimant as a result of having furnished labor, materials, or rental equipment at the site of the improvement. So I do read that, that when we supply labor materials at the site, that this lien upon funds granted in this section belongs to those suppliers. And then the next paragraph talks about how we have to perfect it for it to be effective against third parties. Bankruptcy court said that is unambiguous. Do you agree? At least the statute itself. I agree with the bankruptcy court opinion and the district court opinion in this case. So if it's unambiguous, we don't need to talk about policy, do we? No. But policy is in favor of the subcontractors, but, no, we don't. So this definition of interest that we talked about from the bankruptcy code perspective, the bankruptcy court said it was very broad. Where does that definition arise within the code? It's not. I haven't found it within the code. I think you have to go to state law, and under North Carolina state law, when someone supplies labor material to a project, they, nobody else. That would tell you what the interest is. But the code itself refers to the term interest. And within the code, which seems to be the point of the other side, is that the code has a limitation here. So where does this definition of interest come? I mean, the Fourth Circuit has spoken to it, too. It seems as though we've indicated it can be broader than a lien. It was expressly ruled. But where do you say the definition comes from within the code? I mean, how do we define the term interest under the bankruptcy code? I think you have to go to state law for that. And when there's clearly a receivable, which is property of the estate, and when the state law says that we have the right to a super-priority lien on that receivable, that's the interest that already exists before the bankruptcy and is created upon the delivery of the materials, because not everybody has a right to that super-priority lien. It's only the special class of creditors, and that is the ones that effectively generate that receivable. It was our materials that generated the receivable that the debtor was attempting to divert to pay the IRS lien and or whatever other obligations. Is the effective statute at page A54, appendix 54 of your brief, do you know it? Yes, it is. Okay. And so you read that as that first paragraph, which I think may be the same paragraph as I read, is the first-year subcontractor shall be entitled to a lien upon funds. And you think that creates your interest. Yes. That sentence does. And 6 talks about how you perfect that. But you say you have to have something to be perfected. And you say who furnishes is entitled to a lien, that that lien either is the interest or recognizes the interest that you have. One of the two. Correct? Exactly. And so you don't think – I mentioned policy, but I said I don't think we go there either. I can understand why policy supports you. But we look at the statute first, and you think that statute, North Carolina law creates that right in a subcontractor, which right the bank even agrees to except for filing bankruptcy. Exactly. And I think you also can read it in context with the North Carolina Constitution, which mandates that we be given that right and that interest. Thank you. Thank you, Mr. Wolf. Mr. Brown. Your Honor, while it's true that the Constitution provides for an adequate lien, the North Carolina courts have determined that Chapter 44A satisfies the constitutional mandate. And so we look to 44A18. Now, this is important. The bankruptcy court completely did not discuss the very first sentence under 44A18, which says, upon compliance with this article, a subcontractor who furnishes labor shall be entitled to a lien upon funds. Upon compliance with this article, that's Article 2, the district court did not ignore that sentence but said that the mere furnishing of labor and materials was sufficient to constitute compliance. Well, if we plug that into the statute, it would read, upon the furnishing of labor and materials, a first-tier subcontractor who furnishes labor or materials shall be entitled to a lien on funds. Okay, I'll take your point. What does a subcontractor have until compliance? A subcontractor has a remedy. They have a right to assert a remedy in the funds. Based on what, though? What is that remedy based on? Is it just a grant from the state? It's provided in the statute. I'm going to ask, well, what is that based on? So, in other words, you think the state in this article would be just the same if it said anybody who lives within a mile upon compliance. Isn't this statute of compliance based on something, though? Isn't it based on either some preexisting relationship or interest or something? It's based on something, isn't it? I'm trying to see what you described that as. Yeah, well, upon compliance, what this article is based on, let's read further down in the article. Important to note, 44A20 says that upon receipt of the notice, the property that we're talking about, upon receipt of the notice, the obligor must retain the funds, which is the property. Prior to receiving the notice, there is no obligation to retain funds here. Prior to receiving the notice, subcontractors have no interest in the funds. The owner can do whatever it wants with the funds as far as they can pay them to the general. That doesn't answer the basic question because the question then is, the issue then is, once he gets that notice, he has to act differently, doesn't he? That's correct. And so it's not just North Carolina hadn't created a right for people just to give your bank notice and they have to stop spending the fund. It has to be something that precedes that notice, isn't there? And isn't that the furnishing of the materials that allows, upon perfection, that interest which exists to take a certain status? Isn't that correct? Well, it's helpful if I back up and talk about the interest in property. Legislative history talks about – I don't know how to answer that. Is that scenario correct that Judge – Either yes or no, and then you proceed on. It's not correct? Respectfully, I do not think that that is correct. And that is because under the plain language, there is nothing for an interest in funds. There's no attachment to the funds until the notice has been served. And I didn't hear any clear definition of what interest the subs have other than a mere right to assert a claim. And that attachment is to enforce what? The attachment is to – Enforce the lien. Upon obtaining the lien, the lien attaches. But the fact that a lien is created, that's based on something. Well, the lien is provided for, but there's – Not that it's provided for, but the fact that it's provided for is based on something, isn't it? I mean, there's some basis for a lien to be effective after perfection. And that has to do something with the relationship between the parties before perfection, doesn't it? In other words, are you equating interest to attachment? Well, I am making that comparison because – It seems as though you're equating it. You said it doesn't happen. Basically, you don't have an interest until it's attached. And if you look to some other decisions, it's helpful to look at these environmental super lien cases where the courts looked at, all right, maybe there's a simultaneous creation and perfection situation here, which is what is the case here. But in each of those cases, the court looked at what the state did prior to petition, giving notice, saying, we intend to pursue a lien here. And tenaciously pursuing is what the 229 Main Street Court described it as. In this case, there was no effort to obtain a lien until after the petition was filed. Why would there be? If that's going to be the basis for your distinction, why in fact would somebody do that? It's BB&T's position that if a supplier supplies something to someone over whom they have a line of credit or some kind of right to operational funds, BB&T wants to advise every subcontractor in North Carolina is, as soon as you put something on the job site that we're involved with, run and perfect it. And the subcontractors – I'm out of time, Your Honor. I'd like to hear the answer. The subcontractors were aware of the Harrelson Utilities decision. No, I didn't ask you that. I said, is that BB&T's position that everybody, mom and pop, every small business, anybody that supplies – I just want to know what BB&T's position is. Wait, let me finish. Their position is if you supply anything on any job site that we have funding over, we want you to immediately perfect to be sure you get the money. That's BB&T's position under the law. The position is if they don't like the way the statute reads, they can ask it to be changed, and the statute was changed. The statute doesn't have to be changed. Under this statute, they could perfect before bankruptcy, couldn't they? No, Your Honor. I don't think so. Thank you very much, Mr. Brown. Thank you very much.
judges: Robert B. King, Dennis W. Shedd, James A. Wynn, Jr.